IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| KYLA ERWIN and DONNA CLARK,<br><br>**Plaintiffs,**<br><br>vs.<br><br>**DAIMLER NORTH AMERICA CORPORATION,**<br>Serve: CT Corporation System<br>120 South Central Avenue<br>Clayton, MO 63015<br><br>**DAIMLER TRUCKS NORTH AMERICA LLC f/k/a FREIGHTLINER, LLC,**<br>Serve: CT Corporation System<br>120 South Central Avenue<br>Clayton, MO 63015<br><br>**FREIGHTLINER, LLC,**<br>Serve: CT Corporation System<br>120 South Central Avenue<br>Clayton, MO 63015<br><br>**Defendants.** | Case No.<br><br>**Jury Trial Demanded** |

## COMPLAINT

Plaintiffs Kyla Erwin and Donna Clark ("Plaintiffs"), for their Complaint against Defendants Daimler North America Corporation, Daimler Trucks North America, LLC and Freightliner, LLC, make the following allegations:

### PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Kyla Erwin is a resident and citizen of Greene County, Missouri.

2. Plaintiff Donna Clark is a resident and citizen of Hickory County, Missouri.

3. Kyle D. Erwin was Plaintiff Erwin's natural father and Plaintiff Clark's natural son. He was killed on February 5, 2015.

4. Plaintiffs bring this action pursuant to Mo. Rev. Stat § 537.080, commonly referred to as the "Missouri Wrongful Death Statute," on behalf of themselves and all persons entitled to recover under the statute. Plaintiffs are the proper parties to this action under the statute and bring this action for the wrongful death of Kyle D. Erwin ("Decedent").

5. Defendant Daimler North America Corporation is a Delaware Corporation with its principal place of business in Detroit, Michigan.

6. Defendant Daimler Trucks North America LLC is a Delaware limited liability company with its principal place of business in Portland, Oregon. At all times relevant, Daimler Trucks designed, manufactured and sold heavy-duty trucks under the Freightliner Truck brand. Freightliner Trucks LLC is a division of Daimler Trucks North America LLC.

7. Defendants are subject to personal jurisdiction in Missouri. Defendants are authorized to conduct business in Missouri, conduct substantial and continuing business in Missouri and derive substantial economic profits from Missouri. Defendants may be served through their registered agent, CT Corporation System 120 South Central Avenue Clayton, MO 63015.

8. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 because there is complete diversity and the amount in controversy exceeds $75,000.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Defendants are subject to this Court's personal jurisdiction and therefore reside in this judicial district.

## FACTS

10. At approximately 2:44 p.m., on or about February 5, 2012, Kyle D. Erwin was driving a 1999 Freightliner FLC 120 tractor truck, VIN 1FUYSSZB2XLA42896 (the "Subject Vehicle") northbound on US 67 approximately one half of a mile south of US 60 in Butler County, Missouri. The Subject Vehicle was towing a utility trailer loaded with butter products.

11. As the Subject Vehicle traveled northbound on US 67, it traveled off the right side of the roadway. The Subject Vehicle rolled onto its roof.

12. During the rollover, the cab of the vehicle collapsed, crushing Kyle Erwin to death.

13. The Subject Vehicle was originally designed, engineered, manufactured, and marketed by Defendants and placed into the stream of commerce, where it reached the consumer in substantially the same condition as when it left the control of Defendants and had not been materially altered, modified or damaged.

14. Immediately prior to the accident on February 5, 2012, the Subject Vehicle was in substantially the same condition as when it left the control of Defendants and had not been materially altered, modified, or damaged prior to the accident.

15. At the time of the accident, the Subject Vehicle was being used as intended and in a manner reasonably foreseeable by Defendants.

16. At the time the Subject Vehicle was sold new, it was defective in its design and manufacture, and it was unfit, unsafe, and unreasonably dangerous when used as intended when it left Defendants' control.

17. At the time Decedent purchased the Subject Vehicle, the Subject Vehicle was defective in its design and manufacture, and it was unfit, unsafe, and unreasonably dangerous when used as intended.

18. The accident and danger posed by the defective and unreasonably dangerous condition of the Subject Vehicle was known or should have been known to Defendants.

19. The Subject Vehicle failed to function as expected.

20. Alternative feasible designs existed that would not impair the Subject Vehicle's usefulness or desirability.

21. The alternative feasible designs would have prevented the harm and Kyle Erwin's death.

22. As a direct and proximate result of Defendants' conduct, acts and omissions, Kyle Erwin was killed, and Plaintiffs were required to expend, incur, and become indebted for substantial medical, hospital, and funeral expenses. More important, Plaintiffs have forever lost the love, services, consortium, comfort, instruction, guidance, counsel, training, and support of Decedent. Plaintiffs are entitled to all damages that Decedent sustained before his death and for which he would have been entitled to recover had he lived.

## COUNT I
## **WRONGFUL DEATH — STRICT PRODUCT LIABILITY**

23. Plaintiffs incorporate the above allegations as if fully set forth herein.

24. Defendants designed, fabricated, produced, compounded, proceeded, assembled, developed, manufactured, tested, distributed, sold, warranted, and placed on the market and into the stream of commerce a defective and unreasonably dangerous product, namely the 1999 Freightliner FLC 120 tractor truck, including the Subject Vehicle, knowing that the Subject Vehicle would reach consumers without substantial change in the condition in which it was sold

4

and that, at the time the Subject Vehicle left Defendants' control, it was defective and in an unreasonably dangerous condition.

25. Defendants knew or should have known that ultimate users, operators and/or consumers would not be capable of detecting the aforementioned defects and dangerous conditions.

26. On February 5, 2012, the Subject Vehicle was being used for the purpose for which it was reasonably and foreseeably intended and was involved in a motor vehicle accident, which was likewise reasonably foreseeable.

27. The Subject Vehicle was defective and unreasonably dangerous because it was not reasonably crashworthy. The defective nature of the Subject Vehicle included, but is not limited to the following:

    a. The structure of the Subject Vehicle, including the cab, roof, doors, and supporting pillars, was defective and unreasonably dangerous because it failed to protect the occupants in a foreseeable accident sequence such as a rollover event;

    b. The Subject Vehicle was defective and unreasonably dangerous because Defendants failed to design the Subject Vehicle's cab, roof and supporting structure so as to minimize intrusion into the occupant compartment, reducing the probability of occupant injury in a foreseeable accident sequence;

    c. The Subject Vehicle was defective and unreasonably dangerous because it was designed and manufactured with defective body joints and driver side structural support;

    d. The Subject Vehicle was defective and unreasonably dangerous because it was manufactured with insufficient bonds, welds, and seams of the driver side structural support;

    e. The Subject vehicle was defective and unreasonably dangerous because the structure of the cab, roof, doors, and supporting pills were composed of material of inadequate strength and resistance; and

    f. Such further defects as the evidence will reveal.

28. Defendants knowingly failed to adequately test the 1999 FLC 120 tractor truck before and during the design, production, and sale of the Subject Vehicle to the public and/or knowingly placed the dangerously designed vehicle into the stream of commerce.

29. Defendants also rendered the Subject Vehicle defective and unreasonably dangerous by failing to adequately warn consumers about the hazard of driving the vehicle with a defective and/or inadequately designed, tested, and manufactured structural system.

30. The defective and unreasonably dangerous condition of the Subject Vehicle was the direct and proximate cause of Kyle Erwin's death.

31. As a direct and proximate result of the injuries to and death of Kyle Erwin, Plaintiffs were required to expend, incur and become indebted for substantial medical, hospital, and funeral expenses. Further, Plaintiffs have forever lost the love, services, consortium, comfort, instruction, guidance, counsel, training, and support of Decedent. In addition, Plaintiffs are entitled to all damages that Decedent sustained before his death and for which he would have been entitled to recover had he lived.

32. At the time Defendants sold the Subject Vehicle, they knew of the defective condition of the Subject Vehicle.

33. The aforesaid misconduct of Defendants constituted a gross indifference and a willful, wanton, and reckless disregard for the safety of the general public, including Decedent, thus justifying and requiring an award of additional damages for aggravating circumstances to be assessed against Defendants in a sum that will deter Defendants and others from such misconduct in the future.

## COUNT II
## WRONGFUL DEATH — NEGLIGENCE

34. Plaintiffs incorporate the above allegations as though fully set forth herein.

35. At all times relevant to the Complaint, Defendants owed to the general public, including the Decedent, a duty to design, manufacture and market only such vehicles as were not defective and unreasonably dangerous to use.

36. Defendants breached their duty to Decedent by manufacturing and marketing the 1999 FLC 120 tractor truck, including the Subject Vehicle, in a defective and unreasonably dangerous condition, in that the Subject Vehicle's structural system, was defective and unreasonably dangerous as set forth above. Additionally, the Subject Vehicle was not crashworthy and lacked available technologically feasible safety features and alternative designs as set forth above.

37. The Subject Vehicle was dangerously defective and unsafe for normal and foreseeable use by and in the presence of the public because of its unsafe design, defective manufacture, and lack of an adequate structural system.

38. Defendants failed to exercise reasonable care in the manufacture and design of the Subject Vehicle.

39. Defendants knowingly failed to adequately inspect and/or test the 1999 FLC 120 tractor truck, including the Subject Vehicle, before and during the design, production and sale of

7

the vehicle to the public and/or knowingly placed the defective and unreasonably dangerous vehicle in the stream of commerce.

40. Defendants negligently, recklessly, and/or knowingly sold the 1999 FLC 120 tractor truck, including the Subject Vehicle, without technologically available safety features, despite being fully aware of the important safety benefits provided by such systems.

41. Defendants negligently, recklessly and/or knowingly failed to warn of the potential dangers posed to consumers and the public by the use of the Subject Vehicle.

42. Defendants' negligent acts included, but are not limited to, the following acts and/or omissions:

 a. Negligently designing and manufacturing the vehicle from an occupant protection and occupant containment standpoint including negligently designing and manufacturing cab structure, body joints, roof, pillars and driver side structural support;

 b. Negligently failing to test the vehicle to ensure the design provided reasonable occupant protection and occupant containment in the event of a rollover;

 c. Failing to disclose known problems and defects;

 d. Failing to meet or exceed internal corporate guidelines;

 e. Failing to comply with the standards of care applicable in the heavy trucking industry insofar as providing reasonable occupant protection and occupant containment in a rollover;

 f. Failing to notify consumers, as required by law, that a defect existed in the vehicle that related to public safety;

8

g. Negligent design and manufacture of the cab structure, body joints, roof, pillars, and driver side structural support, which caused them to fail during the rollover in question;

h. Negligently selecting cab structure, roof, body and pillar materials;

i. Negligently designing and manufacturing the cab structure, roof, body and pillars;

j. Negligently failing to test the cab structure, roof, and body joints in order to ensure that they would not fail during a rollover;

k. Negligently failing to test the welds, seams and bonding of the roof, pillars, and driver side structural support to ensure that they would not fail during a rollover;

l. Negligent failure to warn of the dangers associated with the defective cab structure, body joints, roof, pillars, and driver side structural support;

m. Negligent failure to disclose post-sale information known about the dangers or defects associated with the restraint system, body joints, roof, pillars, and driver side structural support;

n. Negligent concealment of the known dangers and defects associated with the cab structure, body joints, roof, pillars, and driver side structural support;

o. Negligent failure to warn consumers of known cab structure, body joints, roof, pillars, and driver side structural support failures during rollovers; and

p. Such further negligent and careless acts and omissions as the evidence and discovery will reveal.

Respectfully Submitted,

**THE SIMON LAW FIRM, P.C.**

By:   /s/ Kevin M. Carnie Jr.
      John G. Simon, #35231MO
      Kevin M. Carnie, Jr., #60979MO
      John M. Simon, #68393MO
      800 Market Street, Ste. 1700
      St. Louis, MO 63101
      jsimon@simonlawpc.com
      kcarnie@simonlawpc.com
      jmsimon@simonlawpc.com
      Phone: 314-241-2929
      Fax: 314-241-2029

*Attorneys for Plaintiffs*